UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
UNITED STATES OF AMERICA,

        -against-                 <u>MEMORANDUM AND ORDER</u>
                                  06-CR-0550 (JS)(AKT)

SANDRA HATFIELD, DAWN SCHLEGEL,
and DAVID H. BROOKS,

                    Defendants.
------------------------------------X
APPEARANCES
For the Brooks Children:    Michael J. Gilbert, Esq.
                        Dechert LLP
                        1095 Avenue of the Americas
                        New York, NY 10036

For Terry Brooks:          Lisa H. Bebchick, Esq.
                        Fried, Frank, Harris, Shriver
                            & Jacobson LLP
                        One New York Plaza
                        New York, NY 10004

                        Justine A. Harris, Esq.
                        Colson & Harris LLP
                        80 Broad Street, 19th Fl.
                        New York, NY 10004

For the Government:        Christopher A. Ott, Esq.
                        United States Attorney's Office
                        Eastern District of New York
                        610 Federal Plaza
                        Central Islip, NY 11722

SEYBERT, District Judge:

        Presently before the Court is the motion of Elizabeth

Brooks, Andrew Brooks, Victoria Brooks (the "Brooks Children"),

and Terry Brooks (together with the Brooks Children, "Movants")

for an order setting aside bail forfeiture and releasing cash collateral pledged to secure David Brooks' ("Brooks") personal recognizance bond (Docket Entry 1886). For the foregoing reasons, the motion is DENIED in its entirety.

<u>BACKGROUND</u>

The Court assumes familiarity with the facts of this case and only discusses those facts insofar as they are relevant to its decision today.

In January 2008, the Court ordered Brooks' pre-trial release. (<u>See</u> Bail Release Order, Docket Entry 76.) The Bail Release Order was based, in part, upon a $400 million personal recognizance bond, which was secured by $48 million in assets approved by the United States Attorney's Office. (Bail Release Order ¶ 1.) Approximately $17.7 million of that cash was contributed, either directly or indirectly, by the Movants. (Movants' Br., Docket Entry 1886-1, at 2.) It is this contribution to which Movants now claim entitlement.

The Bail Release Order subjected <u>both</u> Brooks <u>and</u> Movants to rigorous financial monitoring. David Brooks, Victoria Brooks, Andrew Brooks, Elizabeth Brooks, Jeffery Brooks, and Terry Brooks were all required to disclose <u>all</u> of their assets and liabilities, prepare an itemized list of their liquid assets, and consolidate their liquid assets into less than twenty-five accounts. (Bail Release Order ¶¶ 13, 15.) The Bail Release Order was clear:

2

> Any knowing violation of this agreement,
> including but not limited to an attempt by
> David H. Brooks . . . (c) to obstruct justice,
> (d) to engage in new criminal activity, or (e)
> to conceal assets, will be grounds for
> revocation of his bail release and for
> forfeiture of the $55 million in bond
> security.

(Bail Release Order ¶ 20.)  Though Brooks' bail conditions changed periodically, (see, e.g., June 13, 2008 Memorandum and Order, Docket Entry 142; July 2, 2008 Memorandum and Order, Docket Entry 161), that condition did not.

Over the next two years, Brooks repeatedly misrepresented to the Court that he was compliant with the financial monitoring terms of his bail agreement.  For instance, at a May 30, 2008 hearing regarding a motion to modify the conditions of Brooks' bail, Brooks' counsel stated, "now [the government] demand[ed] that the money be returned so we brought it back. . . .  So all of that money is back.  He has no funds that the government is unaware of."  (May 30, 2008 Hearing Tr., Docket Entry 1893-6, at 13:25-14:6.)  Later, his Counsel again represented to the Court that Brooks was "in full compliance with the financial terms of the Bail Orders."  (Brooks' Mot. to Modify Bail, Docket Entry 1893-7, at 7.)

In January 2010, the Government presented evidence showing that while Brooks continued to claim transparency in Court, he was working feverishly to secret his assets in nearly every

corner of the world.  The Government presented convincing evidence of three separate, willful, and substantial violations of the Bail Release Order.

First, in June 2008, a London MPD Detective executed a search warrant on safe deposit box 6070 at the Park Lane Safe Depository in London.  (Jett Aff., Docket Entry 766, ¶ 32.)  Prior security camera footage showed Jeffrey Brooks accessing box 6070 and handling large duffle bags.  (Jett Aff. ¶ 30.)  The search of box 6070 revealed approximately $3.6 million in British Pounds, Euros, and United States Dollars.  (Jett Aff. ¶ 32.)  Envelopes found in the safety deposit box linked Brooks to the cash.  The currency was sorted into six envelopes labeled "Jeffery Brooks Securities, Inc.," "Washington Mutual," the "Bellagio," "North Fork Bank," and "US Trust."  (Jett Aff. ¶ 33.)  Brooks had maintained a bank account at US Trust and spent significant time at the Bellagio Hotel and Casino.  (Jett Aff. ¶ 33.)

Second, in the fall of 2009, a confidential source based in Luxembourg explained to FBI Special Agent Angela Jett that he had helped Brooks establish a series of shell corporations and bank accounts in order to facilitate Brooks' secreting assets.  (Jett Aff. ¶¶ 19-20.)  The confidential source and another individual, pursuant to a plan they dubbed "Czerny Kot," established a series of corporate entities in several countries and related bank accounts in San Marino, all designed to conceal

4

Brooks' interest.  (Jett Aff. ¶ 20.)  Jeffrey Brooks and the Brooks Children all provided copies of their passports so that the shell companies and straw bank accounts could be set up in theirs, rather than Brooks' name.  (Jett Aff. ¶¶ 20-21.)

Finally, Brooks' pilot, Irving Villalon, recalled flying Brooks and other family members to Switzerland for a two or three hour visit shortly after he was ousted from DHB Industries, Inc. (Jett Aff. ¶ 48.)  Villalon saw his passengers carrying duffle bags, and understood that they were going to a bank.  (Jett Aff. ¶ 48.)

Presented with sufficient evidence that Brooks has violated the terms of the Court's Bail Release Order, the Court, on January 22, 2010, remanded Brooks into custody and ordered forfeiture of the cash collateral securing Brooks' personal recognizance bond.  (See Jan. 22, 2010 Electronic Order.)  The Court indicated that "upon certain conditions, the Court may set aside a portion of this forfeiture."  (Jan. 22, 2010 Electronic Order.)

Now, Movants request that the Court set aside that portion of the forfeited cash collateral for which they were responsible.  For the following reasons, the Court declines to do so.

<u>DISCUSSION</u>

Federal Rule of Criminal Procedure 46(f)(2) states that the Court "may set aside in whole or in part a bail forfeiture upon any condition the court may impose if: . . . it appears that justice does not require bail forfeiture." FED. R. CRIM. P. 46(f)(b). The burden of establishing that justice requires setting aside bail forfeiture rests with the party seeking to challenge the forfeiture, see <u>United States v. Gambino</u>, 17 F.3d 572, 574 (2d Cir. 1994), and the matter lies within the discretion of the district court. <u>Id.</u> at 574 ("We will not reverse the court absent an abuse of discretion.").

In determining whether justice requires setting aside the bail forfeiture, the Court considers:

> [W]hether the defendant's breach of the bond conditions was willful; the cost, inconvenience and prejudice suffered by the government as a result of the breach; . . . any explanation or mitigating factors presented by the defendant; . . . whether the surety has assisted in the apprehension of the defendant; and whether the surety is a professional or a friend or member of the defendant's family.

<u>Id.</u> (ellipses in original) (quoting <u>United States v. Carvajal</u>, 674 F. Supp. 973, 974 (E.D.N.Y. 1987). The Court should also consider the deterrence value of total forfeiture. <u>Id.</u> at 575. Notably, however, the Court "cannot consider . . . the financial hardship of the [surety] because 'it is the interests of justice--and not the interests of [surety]--which must be considered." <u>Carvajal</u>,

674 F. Supp. at 974 (quoting United States v. Ciotti, 579 F. Supp. 276, 278 (W.D. Pa. 1984)); United States v. Pevzner, No. 08-CR-0706, 2010 WL 1993865, at *3 (E.D.N.Y. May 18, 2010).

Brooks' breach of his bail agreement was willful.  He was keenly aware of the financial restraints imposed upon him, and he knew the consequences of violating them.  That he routinely misrepresented to the Court that all of his assets had been accounted for suffice to show that Brooks was aware of his restraints and appreciative of the consequences of violating them. Thus, this factor weighs heavily against setting aside the bail forfeiture.

Each of Brooks' three separate violations of his bail agreement were direct attempts to conceal assets from the Government, so it is no surprise that the Government incurred significant costs in thwarting them.[1]  Specifically, the Government was required to launch an international investigation into Brooks' financial holdings in the United States, the United Kingdom, Luxembourg, and other countries.  The Czerny Kot project--in which Movants participated--was designed to shelter assets within a

---

[1] The fact that the Government did not quantify, in absolute terms, the cost incurred as a result of Brooks' breach of the bail agreement gives the Court no pause.  See United States v. Blake, No. 14-CR-0312, 2014 WL 6606692, at *3 (E.D.N.Y. Nov. 19, 2014) (finding that this factor weighed against setting aside the bail forfeiture in the absence of a specific calculation).

Gordian knot of corporations and accounts; that the Government incurred significant costs untying the knot is self-evident.

Movants argue that because Brooks never fled custody, the Government did not incur any costs in his subsequent apprehension. (Movants' Br. at 6-7.) Notwithstanding that Brooks' apprehension was straightforward, the Government still suffered prejudice "as a result of the breach" of Brooks' bail agreement. Gambino, 17 F.3d at 574. If the Court were to conclude that the only costs relevant to this calculus is that of apprehending the defendant, the Court would render the non-custodial portions of the bail agreement meaningless. The Court declines to do so, particularly because other courts have ordered the forfeiture of bail upon a defendant's violation of a non-custodial provision of the bail arrangement, See United States v. Stathakis, No. 04-CR-0790, 2007 WL 3124703, at *3 (E.D.N.Y. Oct. 24, 2007) ("[T]he majority of courts have concluded that forfeiture of the bond under Rule 46(f) is an appropriate sanction for the violation of any condition of release, whether that condition relates to the defendant's appearance in court or not.") (collecting cases).

Movants do not offer any explanation for the violations or mitigating circumstances. In this case, the absence of any explanation for the violation of the bail agreement is particularly troubling because the Movants were involved in the breach. Each was involved in the creation of bank accounts or corporations in

8

the Czerny Kot project.  Even if one might not expect the Movants to offer any explanation for Brooks' conduct, the absence of any explanation of their own involvement substantially weighs against setting aside the forfeiture.

Movants argue that they did not participate in violations of Brooks' bail agreement because their involvement in Czerny Kot predated the execution of Brooks' bail agreement.  This argument is senseless.  First, Czerny Kot was not a discrete incident; it was an ongoing and evolving endeavor.  Second, the bail agreement required each of the Movants to disclose the entirety of their assets and interests, and such disclosures were devoid of any interest in the Czerny Kot entities.  Third, Movants' argument flies in the face of equity.  Movants concede that they helped lay the framework of Czerny Kot and were aware of that framework when they posted Brooks' bail, but now invite the Court to set aside the forfeiture because they had no role in Brooks' utilization of the Czerny Kot framework.  The Court declines the invitation to countenance such inequity.

Brooks' apprehension following the revocation of his bail was not difficult, and Movants had little time to aid in that apprehension.  As a consequence, consideration of "whether the surety has assisted in the apprehension of the defendant," is inapplicable here.  Gambino, 17 F.3d at 574.

The sureties in this case are Brooks' family members. Ordinarily, this factor would favor setting aside the bail forfeiture because "nonprofessionals may not fully comprehend the risks incurred." See Blake, 2014 WL 6606692, at *3. This factor is not dispositive. United States v. Gallego, No. 02-CV-5987, 2003 WL 1193536, at *2 (E.D.N.Y. Jan. 29, 2003) (finding that this factor was "not a compelling consideration"). Moreover, Movants were involved in Brooks' complex schemes to secret assets; the Court will not now assume for their benefit that they did not appreciate the consequences of the bail agreement that they themselves endeavored to skirt.

Finally, the Court observes that the deterrent effect that would be served by the total forfeiture of the funds is particularly important in a case that has garnered this much attention. See Gambino, 17 F.3d at 575 ("We believe that the deterrence value served by total forfeiture is especially important in high-profile narcotics and racketeering cases such as the instant one.") (citation omitted). A total forfeiture of the bail funds here would increase the likelihood that financial disclosure and monitoring conditions imposed as a condition of bail will thwart execution of even the most carefully crafted underground asset-sheltering plan. Insofar as total forfeiture in this case helps in the future to keep ill-gotten United States' funds ashore, the public interest favors that result.

10

<u>CONCLUSION</u>

For the foregoing reasons, Movants' motion to set aside Brooks' bail forfeiture (Docket Entry 1886) is DENIED.  The Court RESERVES DECISION as to the ultimate disposition of the forfeited funds and therefore ORDERS the entirety of said funds be placed into an escrow account pending a future order of this Court.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.


Dated:      June   2  , 2015
            Central Islip, New York

11